## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| JIM STREETY, Individually and For Others Similarly Situated, | Case No. 7:20-cv-00049 |
| | Jury Trial Demanded |
| Plaintiff, | Collective Action |
| v. | |
| PARSLEY ENERGY OPERATIONS, LLC, | |
| Defendant. | |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Jim Streety (Streety) brings this lawsuit to recover unpaid overtime wages and other damages from Parsley Energy Operations, LLC (Parsley) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      Streety worked for Parsley as a Drilling Superintendent (also referred to as a Field Superintendent) from approximately December 2016 until May 2018.

3.      Streety and the other similarly situated workers who worked for Parsley in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Parsley classified Streety and other similarly situated workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither Streety, nor any other similarly situated workers who worked for Parsley and received a day-rate, received a guaranteed salary.

7.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper under 28 U.S.C. § 1391(b).

10.     Parsley conducts substantial business operations in this District and Division.

11.     Parsley's corporate headquarters are in this District and Division.

## PARTIES

12.     Streety worked for Parsley as a Drilling Superintendent from approximately December 2016 until May 2018.

13.     Throughout his employment with Parsley, Streety was classified as an independent contractor and paid a day-rate with no overtime compensation.

14.     Streety's relationship with Parsley was an employer/employee relationship.

15.     Streety's written consent is attached as Exhibit A.

16.     Streety brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Parsley's day-rate system.

17.     Although these workers regularly worked more than 40 hours each week, Parsley paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield workers (including but not limited to Drilling Consultants, Drilling Superintendents, Drilling Supervisors, HSE Consultants, Completions Consultants, Completions Supervisors, and Mud Engineers), employed by, or working on behalf of, Parsley Energy**

**Operating, LLC who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

19.     The Putative Class Members are easily ascertainable from Parsley's business and personnel records.

20.     Parsley is a Texas company and may be served by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201**, or wherever it may be found.

### COVERAGE UNDER THE FLSA

21.     At all relevant times, Parsley has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Parsley has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Parsley has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Parsley has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, Parsley has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Streety and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     Parsley treated Streety and the Putative Class Members as employees and uniformly dictated the pay practices applied to Streety and the Putative Class Members.

27.     Parsley's misclassification of Streety and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     Parsley's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTUAL ALLEGATIONS

29.     Parsley Energy is a Permian-focused independent oil and natural gas company with an extensive operating history.

30.     To provide these services, Parsley hired oilfield personnel (like Streety) to work on its behalf, including Drilling Consultants, Drilling Superintendents, Drilling Supervisors, HSE Consultants, Completions Consultants, Completions Supervisors, and Mud Engineers.

31.     Parsley classified many of these workers (including Streety and the Putative Class Members) as independent contractors.

32.     But Parsley did not hire these workers on a project-by-project basis.

33.     Rather, Parsley hired and treated these workers just like regular, even if sometimes short-term, employees.

34.     During the relevant period, these workers regularly worked for Parsley in excess of 40 hours a week for weeks at a time.

35.     During the relevant period, these workers worked for Parsley on a day-rate basis.

36.     During the relevant period, these workers were not paid overtime for the hours they worked for Parsley in excess of 40 hours each week.

37.     These workers make up the proposed Putative Class.

38.     While exact job titles and job duties may differ, Parsley subjected these workers to the same or similar illegal pay practices for similar work.

39.     For example, Streety worked for Parsley as a Drilling Superintendent in Texas.

40.     Parsley management-level employees interviewed Streety for the position directly.

41.     Parsley management-level employees hired Streety for the position directly.

42.     Streety reported directly to Parsley management-level employees, including Parsley's Senior Superintendent, Jeremy Gwin.

43.     Throughout his employment with Parsley, Streety regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Parsley paid Streety a day-rate for each day worked, regardless of how many hours he worked in a day or week.

44.     During his time with Parsley, Streety regularly worked more than 12 hours each day, often for weeks at a time.

45.     Streety did not exercise discretion and judgment as to matters of significance.

46.     To the contrary, Streety's work was governed entirely by Parsley.

47.     The Putative Class Members performed the same general job duties performed by Streety.

48.     The Putative Class Members worked the same or similar schedule worked by Streety, regularly working more than 40 hours each week. Streety's work schedule is typical of the Putative Class Members.

49.     During the relevant period, Parsley classified Streety and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

50.     Streety and the Putative Class Members never received a salary.

51.     If Streety and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

52.     Streety and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

- 5 -

53.     Without the job performed by Streety and the Putative Class Members, Parsley would not have been able to complete its business objectives.

54.     Streety and the Putative Class Members were economically dependent on Parsley and relied on Parsley for work and compensation.

55.     Parsley determined the amount and type of compensation paid to Streety and the Putative Class Members.

56.     Parsley set Streety's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Parsley.

57.     Streety and the Putative Class Members worked in accordance with the schedule set by Parsley.

58.     Parsley prohibited Streety and the Putative Class Members from subcontracting out the work they are assigned by Parsley.

59.     Streety and the Putative Class Members had to follow Parsley's policies and procedures.

60.     Streety and the Putative Class Members had to adhere to the quality standards put in place by Parsley.

61.     Streety and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Parsley provided Streety and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

62.     Streety and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

63.    Parsley made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Streety and the Putative Class Members work.

64.    Streety and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

65.    Streety and the Putative Class Members did not market their services while employed by Parsley.

66.    While employed by Parsley, Streety and the Putative Class Members worked exclusively for Parsley.

67.    Parsley set Streety's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Parsley.

68.    At all relevant times, Parsley maintained control, oversight, and direction of Streety and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

69.    Parsley controlled Streety's and the Putative Class Members' pay.

70.    Likewise, Parsley controlled Streety's and the Putative Class Members' work.

71.    Streety's and the Putative Class Members' work had to adhere to the quality standards put in place by Parsley.

72.    Streety and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

73.    Parsley knew Streety and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

74.    Parsley's records reflect the fact that Streety and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

75.     Streety and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Streety and the Putative Class Members were paid on a day-rate basis.

76.     Parsley set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Parsley's policies and procedures.

77.     The work Streety and the Putative Class Members performed was an essential part of Parsley's core businesses.

78.     Parsley controlled Streety's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

79.     Parsley controlled all the significant or meaningful aspects of the job duties Streety and the Putative Class Members performed by requiring them to strictly adhere to Parsley's directives, policies, and procedures.

80.     Parsley exercised control over the hours and locations Streety and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

81.     Even though Streety and the Putative Class Members may have worked away from Parsley's offices without the constant presence of Parsley's supervisors, Parsley still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

82.     Very little skill, training, or initiative was required of Streety and the Putative Class Members to perform their job duties.

83.     Indeed, the daily and weekly activities of Streety and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Parsley.

84.     Virtually every job function was predetermined by Parsley, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

85.     Parsley prohibited Streety and the Putative Class Members from varying their job duties outside of predetermined parameters and required Streety and the Putative Class Members to follow its policies, procedures, and directives.

86.     Streety and the Putative Class Members performed routine job duties largely dictated by Parsley.

87.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

88.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

89.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

90.     Parsley uniformly denied Streety and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

91.     Streety and the Putative Class Members were not employed on a salary basis.

92.     Streety and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

93.     Parsley's day-rate policy violated the FLSA because it deprived Streety and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

94.     Parsley knew Streety and the Putative Class Members worked more than 40 hours in a week.

95.     Parsley knew, or showed reckless disregard for whether, Streety and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

96.     Parsley knew, or showed reckless disregard for whether, Streety and the Putative Class Members were not exempt from the FLSA's overtime provisions.

97.     Nonetheless, Streety and the Putative Class Members were not paid overtime.

98.     Parsley knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

99.     Streety brings this claim as a collective action under the FLSA.

100.    The Putative Class Members were victimized by Parsley's pattern, practice, and/or policy which was in willful violation of the FLSA.

101.    Other Putative Class Members worked with Streety and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

102.    Based on his experiences with Parsley, Streety is aware that Parsley's illegal practices were imposed on the Putative Class Members.

103.    The Putative Class Members are similarly situated in all relevant respects.

104.    The Putative Class Members are blue-collar workers.

105.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

106.    The illegal day-rate policy that Parsley imposed on Streety was likewise imposed on all Putative Class Members.

107.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

108.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

109.    The overtime owed to Streety and the Putative Class Members will be calculated using the same records and using the same formula.

110.    Streety's experiences are therefore typical of the experiences of the Putative Class Members.

111.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

112.    Streety has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

113.    Like each Putative Class Member, Streety has an interest in obtaining the unpaid overtime wages owed under federal law.

114.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

115.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Parsley will reap the unjust benefits of violating the FLSA.

116.    Further, even if some of the Putative Class Members could afford individual litigation against Parsley, it would be unduly burdensome to the judicial system.

117.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

118.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

119.    Among the common questions of law and fact are:

      a.    Whether Parsley employed the Putative Class Members within the meaning of the FLSA;

b. Whether Parsley's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

c. Whether Parsley's decision to classify these workers as independent contractors was made in good faith;

d. Whether Parsley's violation of the FLSA was willful; and

e. Whether Parsley's illegal pay practice applied to the Putative Class Members.

120. Streety and the Putative Class Members sustained damages arising out of Parsley's illegal and uniform employment policy.

121. Streety knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

122. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Parsley's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

123. Parsley is liable under the FLSA for failing to pay overtime to Streety and the Putative Class Members.

124. Consistent with Parsley's illegal day-rate policy, Streety and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

125. As part of its regular business practices, Parsley intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Streety and the Putative Class Members.

126. Parsley's illegal day-rate policy deprived Streety and the Putative Class Members of the premium overtime wages they were owed under federal law.

127.    Parsley was aware, or should have been aware, that the FLSA required it to pay Streety and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

128.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

129.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

130.    Those similarly situated employees are known to Parsley, are readily identifiable, and can be located through Parsley's records.

### CAUSE OF ACTION
### VIOLATION OF THE FLSA

131.    Streety realleges and incorporates by reference all allegations in preceding paragraphs.

132.    Streety brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

133.    Parsley violated, and is violating, the FLSA by failing to pay Streety and the Putative Class Members overtime.

134.    Parsley misclassified Streety and Putative Class Members for purposes of the FLSA overtime requirements.

135.    Streety and the Putative Class Members were Parsley's employees for purposes of the FLSA overtime requirements.

136.    Parsley was Streety's and the Putative Class Members' employer under the FLSA. Parsley suffered or permitted Streety and the Putative Class Members to work for or on its behalf during the relevant period.

137.    Parsley cannot meet its burden to demonstrate Streety and Putative Class Members are exempt from overtime under the administrative exemption.

138.    Parsley cannot meet its burden to demonstrate the Streety and Putative Class Members are exempt from overtime under the executive exemption.

139.    Parsley cannot meet its burden to demonstrate Streety and Putative Class Members are exempt from overtime under the professional exemption.

140.    Parsley cannot meet its burden to demonstrate Streety and Putative Class Members are exempt from overtime under the highly compensated exemption.

141.    Parsley misclassified Streety and the Putative Class Members as independent contractors.

142.    Parsley failed to guarantee Streety and the Putative Class Members a salary.

143.    Parsley failed to pay Streety and the Putative Class Members overtime.

144.    Parsley paid Streety and the Putative Class Members a day-rate.

145.    Parsley knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Streety and the Putative Class Members overtime compensation.

146.    Parsley's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

147.    Accordingly, Streety and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

**JURY DEMAND**

148.    Streety demands a trial by jury.

**PRAYER**

WHEREFORE, Streety, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

- 14 -

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b. A judgment against Parsley awarding Streety and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d. An order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson

**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**